UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 05-22658-CIV-JORDAN

NILDA PROHIAS, et. al.,     )
         Plaintiffs     )
                 )
vs.              )
                 )
PFIZER, INC.,      )
         Defendant    )
_____  )

**ORDER ON PFIZER'S MOTION TO DISMISS CLAIMS AGAINST
NILDA PROHIAS, NANCY YOST, THE TEAMSTERS PLAN, AND HEALTH CARE FOR ALL**

The plaintiffs filed a proposed nationwide class action, alleging that Pfizer engaged in false and misleading advertising of its cholesterol-lowering drug, Lipitor. Pending is Pfizer's motion to dismiss [D.E. 19]. Because of the quantity of issues raised in Pfizer's motion and the various state laws that apply to each named plaintiff, I address Pfizer's arguments only in part in this order. For the reasons stated below, Pfizer's motion to dismiss the complaint as to Nilda Prohias, Nancy Yost, the Teamsters Plan, and Health Care for All is GRANTED.

## I. FACTS[1]

### A. LIPITOR'S FDA APPROVALS

Pfizer is the manufacturer of Lipitor, the most widely prescribed statin for lowering cholesterol. It is undisputed that Lipitor successfully lowers cholesterol. Lipitor was first approved by the Food and Drug Administration ("FDA") in 1996, as an adjunct to diet, to reduce elevated LDL-C cholesterol in patients with primary hypercholesterolemia. *See* Complaint at ¶ 93. On July 10, 1998, the FDA approved Lipitor as an adjunct to diet to reduce elevated total cholesterol and elevated LDL-C cholesterol in all patients. *Id.* at ¶ 94. On July 30, 2004, Lipitor was approved for the first time for the prevention of cardiovascular disease in certain patients. Specifically, Lipitor received additional FDA labeling approval for reducing the risk of heart attacks "[i]n adults without

_____

[1] The relevant facts are taken from the complaint, as I must look only to the facts alleged in the complaint in ruling on this motion to dismiss.

clinically evident coronary heart disease, but with multiple risk factors for coronary heart disease, such as age $\geq$ 55 years, smoking, hypertension, low HDL-C, or a family history of early coronary heart disease." *Id*. at ¶ 96.

In sum, until July 30, 2004, Lipitor was not approved for any patients for reducing the risk of coronary heart disease ("CHD"). Rather, the FDA concluded that, notwithstanding the cholesterol-lowering benefits of Lipitor, the "relationship between Lipitor's lipid-lowering effect and its effect on cardiovascular diseases or survival is not known." *Id*. at ¶ 8. After July 30, 2004, Lipitor was approved for reducing the risk of heart attacks in adults with multiple risk factors, but its approval was still not extended to include "reduction in cardiovascular morbidity and mortality." *Id*. at ¶ 97.

### B. PFIZER'S ADVERTISING CAMPAIGN FOR LIPITOR

Pfizer's print and television advertisements for Lipitor frequently show pictures of women or the elderly with their cholesterol numbers attached with text warning that "high cholesterol is a risk factor for heart disease." Complaint at ¶¶ 5-6; *see id.* at ¶ 107 (undated Lipitor advertisement claiming that high cholesterol is a risk factor for heart disease). The plaintiffs allege, however, that there is no scientific support for the claim that Lipitor reduces the risk of heart disease in women or elderly patients who do not already have heart disease or diabetes. The plaintiffs allege that the purpose of the advertisements is to create the impression that Lipitor protects against heart disease, thus misleading consumers as to the benefits of Lipitor. In particular, as a result of Pfizer's advertising campaign, 34% of the individuals polled in a recent survey indicated that they believe that Lipitor has been shown to prevent heart attacks. *See id.* at ¶ 91. The advertisements for Lipitor encourage consumers to ask their doctor if Lipitor is right for them, thus inducing them to visit a doctor.

Pfizer also engages in promotion of Lipitor to physicians. Specifically, Pfizer employs thousands of salespersons to call on physicians and promote Pfizer products by passing out literature and promotional materials regarding the benefits of Lipitor, including prevention of heart disease in women and elderly patients who have not been diagnosed with heart disease. *Id*. at ¶¶ 82 - 84.

In sum, the plaintiffs allege that Pfizer has engaged in a multifaceted advertising campaign to convince doctors and consumers that Lipitor reduces heart disease, even though there was not

scientific evidence of such benefits.[2]  Such misleading advertising, according to the plaintiffs, creates artificial demand for Lipitor and an artificial increase in Lipitor's price, thus causing economic injury to Lipitor purchasers.  But the plaintiffs do not allege that Lipitor failed to lower their cholesterol levels, or that they were physically injured in any way by taking Lipitor.

### C. The Class Plaintiffs Addressed in this Order

### I. Nilda Prohias

Ms. Prohias is a resident of Florida.  She has not been diagnosed with heart disease or diabetes.  It is unknown whether she has multiple risk factors for heart disease.  According to the complaint, Ms. Prohias "pays for Lipitor." *Id*. at ¶ 17.  The parties agree that Ms. Prohias' claims are governed by Florida law.

### ii. Nancy Yost

Ms. Yost is a resident of New York.  She has not been diagnosed with heart disease or diabetes.  It is unknown whether she has multiple risk factors for heart disease.  According to the complaint, Ms. Yost "pays for Lipitor." *Id*. at ¶ 20.  The parties agree that Ms. Yost's claims are governed by New York law.

### iii. The Teamsters Plan

Teamsters Local No. 35 Health Plans (the "Teamsters Plan") is a trust fund established and maintained pursuant to § 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5), and is an employee benefit plan established and maintained pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq, for the purpose of providing health benefits, including prescription drug coverage, to eligible plan participants and beneficiaries.  According to the complaint, the Teamsters Plan provides prescription drug coverage for approximately 4,500 participants in New Jersey.  The complaint does not, however, allege that the Teamsters Plan or its

---

[2]  The plaintiffs go even further, alleging that Pfizer's marketing campaign "obfuscates, and indeed, **completely fails to disclose**, the fact that while studies indicate that Lipitor reduces cholesterol, there is no evidence that this reduction has any effect on the development of coronary heart disease [ ] or mortality rates for women and elderly patients." Complaint at ¶ 10 (emphasis added).  But the advertisements included within their complaint completely disprove this allegation, as most of the advertisements explicitly state that Lipitor "has not been shown to prevent heart disease or heart attacks."  *See* Complaint at ¶¶ 89, 101, 106.

participants paid for Lipitor during the relevant time period or even that Lipitor is one of the prescription drugs covered by the Teamsters Plan. The parties agree that the Teamsters Plan's claims are governed by New Jersey law.

### iv. HEALTH CARE FOR ALL

Health Care for All ("HCFA") is a consumer advocacy organization that has led the fight in Massachusetts to expand access to affordable, quality health care. HCFA does not assert that it purchases, or that it has ever purchased, Lipitor. It asserts associational standing through its member, Steven Rosenfeld, who has paid out of pocket for Lipitor.

## II. LEGAL STANDARD

A motion to dismiss is granted only when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The factual allegations of the complaint are taken as true and construed in the light most favorable to the plaintiff. *See McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1220 (11th Cir. 2002). The scope of the court's review of a motion to dismiss is limited to the four corners of the complaint. *See St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

## III. DISCUSSION

### A. THE TEAMSTERS PLAN

As to the Teamsters Plan, the complaint must be dismissed for failure to state a claim because the complaint does not allege that the Teamsters Plan suffered any damages. Damages, or some ascertainable loss, is undisputedly an element of each of its claims. First, the Teamsters Plan's consumer fraud act claim is governed by N.J. Stat. §56:8-19, which provides that:

> Any person **who suffers any ascertainable loss** of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction.

(emphasis added). Accordingly, to state a claim under the New Jersey Consumer Fraud Act, a plaintiff must allege each of three elements (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants'

4

unlawful conduct and the plaintiff's ascertainable loss. *See Carton v. Choice Point*, 450 F.Supp.2d 489, 498 (D.N.J. 2006). Likewise, to state a claim for negligent misrepresentation under New Jersey law, a plaintiff must plead some injury which resulted to the plaintiff by acting in justifiable reliance upon the defendant's misrepresentation. *See Kuhnel v. CNA Ins. Companies*, 322 N.J.Super. 568, 581 (N.J.Super.A.D. 1999) (stating elements of claim for negligent misrepresentation under New Jersey law); *Adamson v. Ortho-McNeil Pharmaceutical, Inc.,* 463 F.Supp.2d 496, 504 (D.N.J. 2006) (same). Finally, to state a claim for unjust enrichment, a plaintiff must plead that (1) he conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. *See VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (N.J. 1994); *Adamson*, 463 F.Supp.2d at 505.

The Teamsters Plan, however, does not allege that it, or any of its members, ever purchased Lipitor. The only arguably relevant allegation made by the Teamsters Plan is that it provides prescription drug coverage for approximately 4,500 participants in New Jersey. But the complaint does not even allege that Lipitor is one of the prescription drugs covered by the Teamsters Plan. The plaintiffs have admitted that their entire claim of loss is premised on the fact that they paid for a drug that they would not have paid for (or at least would not have paid as much for), had they known the truth about its benefits. *See* December, 1, 2006, Transcript at 27. *See also* Plaintiffs' Opposition at 36 (the plaintiffs suffered harm "when they paid out of pocket for a product that offered them no medical benefit"). Therefore, without an allegation from which I can even infer that the Teamsters Plan ever purchased or paid for Lipitor, I must conclude that the Teamsters Plan fails to allege that has suffered a loss, or that it conferred a benefit on Pfizer, and therefore fails to state a claim for which relief can be granted.

### B. Ms. Prohias & Ms. Yost

As to Ms. Prohias and Ms. Yost, the complaint also must be dismissed for failure to allege injury. The problem with Ms. Prohias' and Ms. Yost's claims, however, is not that they fail to allege that they paid for Lipitor, but that they *still pay for* Lipitor notwithstanding their knowledge of its alleged lack of benefits.

Damages are also an element of claims for negligent misrepresentation and unjust enrichment

5

under Florida and New York law (applicable to Ms. Prohias and Ms. Yost, respectively).  To state a claim for negligent misrepresentation under either Florida or New York law, a plaintiff must plead some injury which resulted to the plaintiff by acting in justifiable reliance upon the defendant's misrepresentation.  *See Romo v. Amedex Ins. Co.*, 930 So.2d 643, 650-51 (Fla. 3d DCA 2006) (stating elements of claim for negligent misrepresentation under Florida law); *Marcus v. AT & T Corp.*, 938 F.Supp. 1158, 1172 (S.D.N.Y. 1996) (same under New York law).  Likewise, to state a claim for unjust enrichment, a plaintiff must plead, in part, that the circumstances are such that it would be inequitable for the defendant to retain the benefit conferred on it by the plaintiff.  *See Shands Teaching Hosp. & Clinics, Inc. v. Beech Street Corp.*, 899 So.2d 1222, 1227 (Fla. 1st DCA 2005); *Kaye v. Grossman*, 202 F.3d 611, 616 (2nd Cir. 2000).  "Logically, the circumstances necessary to establish the third element must demonstrate that the plaintiff was harmed in some way before courts will impose this equitable remedy."  *Green v. McNeil Nutritionals, LLC*, 2005 WL 3388158, at *6 (Fla.Cir.Ct. 2005).  Thus, to state a claim for unjust enrichment in these circumstances, the plaintiffs must plead (or I must be able to infer from the allegations in the complaint), at a minimum, that they did not get the "benefit of their bargain" when they purchased Lipitor.

Taking the allegations in the complaint in the light most favorable to the plaintiffs, I conclude that Ms. Prohias and Ms. Yost fail to plead injury sufficient to state a claim for either negligent misrepresentation or unjust enrichment.  In particular, both Ms. Prohias and Ms. Yost pled that they "pay" for Lipitor.  In other words, they continue to purchase Lipitor even though they are purportedly now aware of the "truth" regarding its alleged lack of coronary benefits.  As the plaintiffs' counsel admitted at oral argument, these parties are not entitled to recover any damages since they undisputedly still choose to purchase Lipitor irrespective of its heart disease- related benefits:

> The Court:      If there are any individuals or entities that purchased Lipitor or paid for Lipitor . . . only for the purpose of reducing cholesterol and cared less about whether or not it prevented or lowered the risk for any sort of heart or coronary disease, would those individuals or entities be entitled to recover damages?
>
> Plaintiffs' Counsel: I don't see how.

December, 1, 2006, Transcript at 30.  *See Heindel v. Pfizer, Inc.*, 381 F.Supp.2d 364, 379 (D.N.J. 2004) (relying, in part, on the fact that the plaintiffs continued to use Vioxx and Celebrex, to reject

the plaintiffs' contention that they suffered an economic loss by purchasing the drugs). Contrary to plaintiffs' counsel's assertion that "all of our plaintiffs claim they have an ascertainable loss [because] they have paid for a drug they would not have paid [for] had they known the truth," *see* December, 1, 2006, Transcript at 29, Ms. Prohias and Ms. Yost still pay for the drug even though they now know the "truth". Based on the allegations in the complaint, I must conclude that these plaintiffs purchase Lipitor for its cholesterol-reduction benefits or other health benefits, which they have received and continue to receive. Therefore, they fail to allege that they have been injured as required to state a claim for negligent misrepresentation, or that they did not receive the benefit of their bargain as required to state a claim for unjust enrichment. *See Whalen v. Pfizer, Inc.*, 2005 WL 2875291, at *5 (N.Y.Sup. 2005) ("if the plaintiff, acting with knowledge of the facts, pays for the product and continues to use the product, there is no unjust enrichment and recovery is barred").

The claims fail under the relevant consumer protection statutes as well. As to Ms. Prohias, to state a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), she must allege, at a minimum, that she has been aggrieved. *See Macias v. HBC of Florida, Inc.*, 694 So.2d 88, 90 (Fla. 3rd DCA 1997) (in order for the consumer to be entitled to any relief under FDUTPA, the consumer must not only plead and prove that the conduct complained of was unfair and deceptive but the consumer must also plead and prove that he or she was aggrieved by the unfair and deceptive act.). Specifically, Fla. Stat. § 501.211 provides that the following individuals are entitled to relief:

> 1) Without regard to any other remedy or relief to which a person is entitled, **anyone aggrieved** by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

> (2) In any action brought by **a person who has suffered a loss** as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105. However, damages, fees, or costs are not recoverable under this section against a retailer who has, in good faith, engaged in the dissemination of claims of a manufacturer or wholesaler without actual knowledge that it violated this part.

(emphasis added). Likewise, as to Ms. Yost, to state a claim under the New York deceptive and unfair practices law, a plaintiff must allege actual damage. Specifically, N.Y Gen. Bus. Law § 349(h) provides that:

any person **who has been injured** by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

"[T]he New York Court of Appeals has made clear that only plaintiffs who suffer an actual, direct, non-derivative injury may recover under Section 349." *Einhorn v. Mergatroyd Productions,* 426 F.Supp.2d 189, 195 (S.D.N.Y. 2006) (citing *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200, 207-08 (2004)).

Taking the allegations in the complaint in the light most favorable to these plaintiffs, who continue to pay for Lipitor with knowledge as to its alleged limitations, I cannot come up with any theory upon which they are actually injured or aggrieved by the allegedly misleading advertisement. Rather, as explained above, the fact that they currently take Lipitor, in light of the information they have, requires me to conclude that they take Lipitor for its cholesterol-reduction or other undisputed health benefits, and therefore cannot claim to have suffered any damage from the allegedly misleading statements about Lipitor's coronary benefits. *Cf. Philip Morris USA Inc. v. Hines*, 883 So.2d 292, 294 (Fla. 4th DCA 2003) (explaining, in the context of decertifying class action under FDUTPA, that whether a smoker was damaged by deceptive advertising for "light" cigarettes depended on why the "light" cigarettes were chosen by the particular smoker).

Still, the plaintiffs contend that they are injured within the meaning of the consumer fraud statutes of the respective states because they paid a higher price for Lipitor than the market would have borne if not for Pfizer's advertising scheme – specifically, they allege "price inflation" damages. But, in the context of a market for a pharmaceutical drug, such damages are too speculative to constitute an injury-in-fact under Article III. In particular, proof of any such "price inflation" injury would depend on evidence that the pharmaceutical market is "efficient" such that information about Lipitor's efficacy results in changes in its price. In a well-reasoned opinion, a district court in New Jersey rejected the "price inflation" theory in an analogous context in which the plaintiffs, who continued to use and purchase a drug notwithstanding alleged misrepresentations as to the drug's benefits, similarly sued the drug manufacturer for their money back:

> Finding no other theory under which they would be entitled to reimbursement for some or all of the purchase price of the arthritis medicine whose benefits they clearly enjoyed, Plaintiffs attempt to explain away this deficiency with their "price inflation" or "fraud on the market" theory. In this context, though, such a theory is patently absurd. It depends on the totally implausible predicate that, had some adverse information about side effects derived from the VIGOR and CLASS studies been more widely disseminated, the Plaintiffs would have paid less for Celebrex and Vioxx. However, (at the risk of stating the obvious) there is no prescription drug "market," at least as that term is understood in the securities context. There, a "perfect market" or "efficient market" is assumed, and adverse information is expected to be quickly absorbed by the market, thus causing the price of the stock or commodity at issue to fluctuate.

*Heindel v. Pfizer, Inc.*, 381 F.Supp.2d 364, 380 (D.N.J. 2004). *See also Kaufman v. i-Stat Corp.*, 165 N.J. 94, 114-17 (N.J. 2000) (providing an in-depth explanation of the efficient capital market hypothesis, which presumes that a stock price incorporates all publicly available information about a stock's value and which underlies the "fraud on the market" theory); *N.J. Citizen Action v. Schering-Plough Corp.*, 367 N.J.Super. 8, 15-16 (App.Div. 2003) (rejecting"price inflation" theory as applied to claims against a drug manufacturer for misrepresenting the efficacy of a drug). For the same reasons, I also reject the plaintiffs' claim that they have been injured by "price inflation" because, in the context of the pharmaceutical market, such damages are purely speculative. They depend on the faulty premise that the price of Lipitor fluctuates based on the public's knowledge of Lipitor's benefits, even though drug prices (unlike stock prices which are necessarily set by the price at which buyers are willing to buy, or sellers willing to sell) are fixed by the product's manufacturer.

Moreover, Ms. Prohias and Ms. Yost (or their physicians) obviously believe that they continue to receive benefits from taking Lipitor, notwithstanding any alleged limitations as to its efficacy, and continue to pay the price charged by Pfizer and its distributors. Thus, to show any damages under the "price inflation" theory (assuming the price did incorporate information about Lipitor's benefits), would require evidence of the *hypothetical* price at which Lipitor would sell if not for the allegedly misleading advertisements. Determination of such hypothetical price, even with expert proof, is too speculative to be the premise of an "actual injury" under Article III. For example, in *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315, 321 (5th Cir. 2002), Ms. Rivera, who had purchased the drug Duract, sued Wyeth for her money back, alleging that Wyeth failed to give certain warnings

about Duract's risks, even though she was not injured by the alleged failure to warn.  The Fifth Circuit rejected her theory of injury explaining that, "[t]o find causation, we would have to infer the absurd --for example, that an extra warning, though inapplicable to [Ms.] Rivera, might have scared her and her doctor from Duract. Such reasoning is too speculative to establish Article III standing." Likewise, in this case, it would be too speculative for purposes of Article III to reach any conclusions as to the effect of Pfizer's advertising on the market price for Lipitor.  *See Williams v. Purdue Pharma Co.*, 297 F.Supp.2d 171, 177 (D.D.C. 2003).  In *Williams*, the plaintiff class members sued Purdue, the manufacturer of the drug OxyContin, for return of the money they paid to purchase the drug, alleging that Purdue falsely advertised that the drug provided 12-hour pain relief.  The plaintiff class, however, consisted only of all purchasers of the drug who had in fact received 12-hours of pain relief (even though certain purchasers had not).  Thus, they pursued, in part, a "price inflation" theory of damages.  Recognizing that this was a "more difficult question" than the other issues disputed by the parties, a district court in the District of Columbia, applying *Rivera*, concluded that the plaintiffs failed to allege injury-in-fact as required to have a justiciable "case or controversy" under Article III. *Williams*, 297 F.Supp.2d at 177 - 78.  As to Ms. Prohias' and Ms. Yost's claims, I agree with *Rivera* and *Williams*.

The only case cited by the plaintiffs in support of their "price inflation" theory is *International Union of Operating Engineers Local #68 Welfare Fund v. Merck & Co., Inc.*, 384 N.J.Super. 275 (N.J.Super.A.D. 2006), in which the Superior Court of New Jersey affirmed certification of a Vioxx class action under New Jersey law.  In doing so, the court found that ascertainable loss -- under the circumstances of that case -- could be established through class wide expert proof.  Specifically, the court stated:

> Under these circumstances, plaintiff may establish a sufficient nexus between the alleged fraud and ascertainable loss by showing via expert proof that, for example, Merck's overarching scheme of omissions and misrepresentations about Vioxx allowed the company to achieve more favorable placement on the formularies than it otherwise might have. Alternatively, plaintiff could present expert proof that absent Merck's misconduct, Vioxx would not have been on the market at all.

Thus, argue the plaintiffs, this "nearly identical" case supports a viable claim for damages in this lawsuit as well.  I disagree as to Ms. Prohias and Ms. Yost, who continue to pay for Lipitor.  The

alleged "loss" in *International Union* was that the Vioxx purchasers would have chosen to buy a different drug than Vioxx, not that they would have bought Vioxx at a different price. *See International Union*, 384 N.J.Super. at 291 ("Plaintiff thus suffered a 'loss in value' when, on behalf of its participants, it paid for a drug with serious health risks that Merck did not disclose, rather than choosing, based on full and truthful information, to select competitors' products instead."). Therefore, the alleged loss in *International Union* was not based on "price inflation" and did not require inquiry into the efficiency of drug prices.[3]

Moreover, to the extent *International Union* holds that the "price inflation" theory of damages is sufficient to state a claim for damages under the consumer fraud acts, the holding raises other problems. First, *Citizen Action*, an earlier decision of the Superior Court of New Jersey, specifically rejected the "price inflation" theory – in the context of a claim against a drug manufacturer for misrepresenting the efficacy of a drug, the same deception at issue here. *See Citizen Action,* 367 N.J.Super. at 15. Moreover, *International Union* does not even mention *Heindel* in discussing whether purchasers of Vioxx suffered an ascertainable loss, even though *Heindel* -- a New Jersey district court decision was directly on point and was discussed in other parts of the *International Union* opinion. Finally, *International Union* (a state court decision) did not consider the Article III concerns with such speculative "price inflation" injuries, which were raised in *Rivera* and *Williams*. In sum, to the extent *International Union* holds that the "price inflation" theory of damages is sufficient to state a claim for damages under the consumer fraud acts (or at a minimum, the New Jersey act), *International Union* is in conflict with the majority of cases in the pharmaceutical context, which reject the "price inflation" theory in the context of a safe and effective drug. *See Heindel*, 381 F.Supp.2d at 380; *Citizen Action*, 367 N.J.Super. at 15; *Williams*, 297 F.Supp.2d at 177

---

[3] Other courts seem to have accepted this theory of damages as well. For example, in *Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43 (N.Y. 1999), the Court of Appeals of New York explained in a footnote that in "a situation where a distributor asserts that its bottled water is from a pure and pristine mountain stream while in reality, it was only tap water[,] . . . a plaintiff might have a claim for the higher price the consumer paid for the product as a result of the misrepresentation in that circumstance." Again, the plaintiff's damage theory in small is not one of "price inflation" but rather, like in *International Union*, a damage theory based on substitution of goods. To show injury, the parties need not speculate as to the price of the good at issue in a different world, but rather can simply look to the price of the substitute good.

In sum, Ms. Prohias and Ms. Yost fail to state a claim for negligent misrepresentation, unjust enrichment, or under their respective state consumer fraud acts because they cannot claim that they are damaged by Pfizer's allegedly misleading advertisements under the circumstances pled.

## C. HEALTH CARE FOR ALL

HCFA admits that it has never purchased Lipitor, and therefore that it has not suffered any direct injury. Still, it claims "associational standing" to pursue claims for relief on behalf of HCFA members who have paid for Lipitor, and have been injured. An association can have standing to pursue the claims of its members, if three elements are met: (1) its members otherwise have standing to sue in their own right; (2) the interests the plaintiff-association seeks to protect are germane to the association's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of the association's members. *See Greater Atlanta Home Builders Ass'n, Inc. v. City of Atlanta, Ga.*, 149 Fed.Appx. 846, 848 (11th Cir. 2005); *Georgia Cemetery Ass'n, Inc. v. Cox,* 353 F.3d 1319, 1322 (11th Cir. 2003).

Assuming HCFA meets the first two elements of associational standing by the allegations in the complaint, I conclude that it fails to meet the third element as to the claims brought in this case. As to the third element, HCFA contends that the participation of its members is not necessary in order for their claims against Pfizer to be resolved. In particular, HCFA argues that "all that would be required for damages to be awarded is for each Class Member to establish the fact of and extent of his or her Lipitor purchases" which "can be calculated simply by using available prescription records." Even if this were true, I disagree because HCFA ignores an essential issue of damages that can be proven only by the members' participation. In particular, and as noted earlier, the plaintiffs' counsel admitted at oral argument that an individual is **only** entitled to damages if he purchased Lipitor for its heart disease and/or coronary benefits, and not if he purchased Lipitor for its cholesterol-reduction benefits. *See* December 1, 2006 Transcript at 30. As in *Greater Atlanta Home Builders*, the HCFA's members may have been affected differently by Pfizer's marketing scheme -- some may have chosen to buy Lipitor for its cholesterol-reducing benefits, and not for its coronary benefits. *See* Complaint at ¶ 91 (only 34% of individuals polled believe that Lipitor has been shown to prevent heart attacks); *Greater Atlanta Home Builders*, 149 Fed.Appx. at 848-49 (association lacked standing to pursue claims for allegedly unlawful impact fees, because the claim required individualized inquiries, namely,

12

whether each member paid the impact fee or not).  Thus, under the plaintiffs' theory of this case, HCFA's members have not been injured *just* because they purchased Lipitor; they have been injured only if they purchased Lipitor specifically for its coronary benefits.  Therefore the HCFA cannot simply prove its members' damages through their prescription records -- rather, to be entitled to damages, each member will need to testify that he or she purchased Liptor for its alleged heart benefits, and not for its cholesterol reducing benefits.  *See Hershenow v. Enterprise Rent-A-Car Company Of Boston, Inc.*, 445 Mass. 790, 791(Mass. 2006) (proving a causal connection between a deceptive act and a loss to the consumer is an essential predicate for recovery under Massachusetts' consumer protection statute).  Since individualized inquiry into the members' reason for buying Lipitor is required to state a claim under the Massachusetts consumer protection statute, the members' participation is clearly necessary.  A court cannot redress the HCFA's members' injuries, to the extent that there are any, without the members' participation in this case, and therefore, HCFA's claims must be dismissed for lack of associational standing.[4]

## IV. CONCLUSION

Pfizer's motion to dismiss is granted in part as to the claims filed by Ms. Prohias, Ms. Yost, the Teamsters Plan, and HFCA.  All claims filed by Ms. Prohias, Ms. Yost, the Teamsters Plan, and HFCA are DISMISSED WITHOUT PREJUDICE.  Pfizer's motion as to the remaining plaintiffs will be resolved in subsequent orders.

DONE and ORDERED in chambers in Miami, Florida, this 24th day of April, 2007.

Adalberto Jordan
United States District Judge

---

[4]  Under Mass. Gen. Laws 93A, which the parties agree applies to HCFA's consumer fraud claims, injunctive relief is similarly available only to a person who has been injured by the unfair and deceptive practices.  Therefore, injunctive relief would also require individual inquiries as to members' injuries.  *See id*. § 9 (allowing injured person to seek equitable remedies, including injunctive relief); *Hershenow,* 445 Mass. at 802 ("A consumer is not [ ] entitled to redress under G.L. c. 93A, where no loss has occurred.")

13

Copy to:        All counsel of record